2-008-1545 In Re Fallaux Mr. Trask, you have reserved five minutes, is that correct? Yes. Okay, you can start then whenever you're ready. All right, may it please the court and counsel, I feel obligated I guess first to assert that this is an important case. It's a patent case, so it's more interesting than the other cases you've heard this morning. Well, I think all the cases are interesting. And we had an earlier patent case too. One of our earlier cases was a patent one as well. Well, I think this is an important case because the manner in which it's decided is likely to have rather wide-reaching implications that go beyond the right to this particular appellant. I think first it's important to emphasize that we recognize from all of the case law in the area, it's almost routine to recognize that ODP practice has been fluid and developing on a case-by-case basis. I remember I saw that. Obviously, it's double patenting is what you're talking about. ODP, right? Yes. Sorry, Your Honor. No, no, that's fine. We're familiar with the parties, the lawyers get familiar with the terms and the acronyms. It's normal to say that. Let me ask you this. It seems that to get to use the two-way test, okay, you have to meet two requirements, right? Berg and Bratt seem to say they're two requirements. Is that correct? Well, and, I mean, as I understand it, they say the applicant could not avoid separate filings and the PTO controlled the rate of prosecution. I mean, as I understand it, if you look at Bratt and Berg and Lilly, but it's mainly stayed, I guess, in Bratt and Berg, those are the two requirements. You have to meet those in order to be entitled to the two-way analysis, right? I think that Berg tends to say that and tends to say that Bratt stands for that proposition, but I would take issue that Bratt actually does say quite that. Well, Bratt focuses on two points, but let's assume that's the case. Now, in this case, it appears that the board decided the case here on the basis of the second prong. Is that correct? Because the examiner said the examiner acknowledged the first prong was met. He said he acknowledged the first prong was met. Yes. And then the board said, assuming the first prong is met, and then it went on to analyze the second prong, correct? Yes. And it ruled against your client, right? Yes. Actually, the board didn't really analyze the second prong, but as I recollect the decision, found it an absence in the record of some showing that the patent office had controlled it. What is the situation here in terms of the first prong? Is it, do the parties agree that it was met? Is it been determined that it was met? Or was it just a sort of statement that the board made in order to get to the second prong? Actually, the board was a little equivocal on it, but in fact, it's easy to see that the first prong is met because based upon the chart that was submitted by the solicitor in the brief, the two applications involve a patent application can be shown to be in two different families of disclosure. The claims are on appeal stemmed down from a first filing that has to do with a packaging cell, which is a rather unique inventive entity. And then the second group, which has no relationship back to the first group, has to do with the invention that is now in the reference claim. So there's never any opportunity during the history of the prosecution of either these patents, either the reference claims or the rejected claims, where those claims could have been presented properly in any common case. What the board has done... Well, in fact, they had different specs, right? They're different specs. Different specifications, totally. So, you know, they may not even support it. Different inventions. You can't lump them together. Let me make this point. I think in this context it's important to recognize that the reference claim is used as a reference because it identifies the packaging cell. It doesn't claim to modify it. It doesn't claim to in any way change it. It just identifies it in a dependent claim. That's where you hear about the per C6 cell. It doesn't do anything to it. It just uses it, and it uses it not for the basic invention but for a very specific preferred embodiment. Okay, but why not file these claims earlier? You've got one, two, three, four. File those continuations. And it's a straight shot. These aren't even CIPs or divisionals or anything like that. I don't... Could you not? Is there some reason you could not have filed the claims that were filed in July 11th of 2003 back in March of 1997? Is there some reason? I assume you're going to tell me the spec would support it because that's the final date you seek. I guess the first thing I have to tell you is that I can't... I'm not aware of a reason to tell you. I'm not informed. Logically, they would be supported and could have been filed there. I think the question is, really, though, is there anything wrong with not filing? Is there a double patenting penalty that just inevitably has to flow to the owners of that first filing because they waited until later to actually present the broad claims? I don't think double patenting law has ever dictated that kind of result. Well, but double patenting law has focused on what Bratt calls the fault. Who's at fault? What Berg calls the control. Double patenting law always has focused on who is responsible for the fact that these claims are coming out. The genus claims or the basic invention claims are coming out after the improvement or, in this case, a species. They do always focus on fault and or control. It seems to me that you have to overcome a little bit of a hurdle in that it was clearly within the control of your client and they could have filed these claims much, much earlier. I guess I'm trying to figure out how I'm supposed to construe that second element, the control or fault element. How would you say I look at that? A few points. I hope I haven't forgotten some of the things that issue that you've raised with your question. But first of all, going back to the Bratt case, Bratt didn't find anybody at fault for anything. I just don't think it's accurate to characterize that as a case that focused on fault. Bratt said and quoted an earlier case, a BORA case, to say that the rate of prosecution to the patent office is a matter over which applicants don't have complete control. But Bratt did seem to focus on fault in the sense that it said it is not Phillips' fault that the combination claims in the Dill patent issued first. He said that, but he said that in the context of a broad claim which wasn't filed until years after the Dill patent issued. It really couldn't have been involved in that case because just as in here there were claims that issued of narrower scope than the claim which was filed subsequently to their issuance. I don't see how Bratt can be construed as having somehow faulted somebody or found no fault. In circumstances that parallel what are in this case, Bratt specifically found that an ODP rejection wasn't even warranted. And in spite of the fact that the court recognized under those particular facts that there would be a term extension, they found that it was not an unwarranted term extension or an inappropriate term extension. And I'd say when you compare that with the facts of this case where there isn't any term extension involved, we're saying that if you take Bratt and he says that under certain circumstances the term extension is acceptable, but in our case where there isn't any term extension even possible, an ODP rejection is still considered appropriate. Not only appropriate, but according to the manual as it currently exists, mandated. Which is one of the principal concerns we have is how did we ever get there where the examiners are told they have no choice. If parties come before them or an applicant where there's what they call conflicting claims, not a common entity but just an overlapping inventor and no common assignee that they must give an ODP rejection. There's no opportunity to examine any facts or anything. You just get the rejection. You'd love to file a terminal disclaimer. In fact, you tried. So you're willing because there is no difference in patent term now that we're under a system where it's tied to filing date. But you can't file a terminal disclaimer because the two patents were signed away initially I guess to the same entity, but then one of them went over to Galapagos and the other one stayed with Crusoe or is with Crusoe. If I'm saying that right, I don't know. So I guess why doesn't the patent applicant bear the burden given that the patent applicant controls the assignments? Why aren't you burdened to keep these assignments together such that we don't end up with multiple different entities controlling very close claims? Well, they're not. They're not even in the same universe. Let me give you an analogy or a metaphor. Suppose they were. You're going to argue the underlying double patenting merits. Put that aside for a minute. Assume that the claims, this was a general and an improvement. Assume that. Now, why should it be the case that we open up with a Mack truck a window through which patent applicants can now assign away like Russian nested dolls, multiple different patents that could now be possessed and then unsuspecting competitors would be harangued by many, many different patentees with regard to the same invention. So we don't want to go down that road. So why shouldn't the burden be on patentees to keep all these rights together via controlling the assignment situation? Well, I have to say, Your Honor, that I don't understand the problem. I don't understand. You use the term harangue. The term is often used as harassment. And I would ask, what does harassment mean? If you infringe several patents and different people sue you under those patents, is it multiple piracy or is it harassment? You know, it depends upon the facts of the case. And those facts are never known to the patent examiner. And they're inevitably known to it in a trial situation. In this case, it's a perfect example, really. We have a reference claim, the significance of which is that it says specifically a per C6 cell. It's in a dependent claim. It just identifies. It has nothing to do with the basic invention. It just identifies that substance. Therefore, according to the MPEP, there isn't any novelty against the broad claim that's pending, which is claiming packaging cells of which one is a per C6 cell. The second invention, broadly, without limiting to this claim, could use other packaging cells. And the other claims are directed to that. But in a very specific environment, it says we prefer the per C6 cell. Now, this is analogous, I would say, yes, to group A, which has five inventors in it, inventing, let's say, a dump truck, and group B, which has four inventors in it, one of which is common, new employer, and invents a snowplow and puts in a patent application that says I can hang my snowplow on various traction vehicles and then dependently says where the traction vehicle happens to be a dump truck. That's the relationship with these inventions. And I think that if you go along with this as being a proper double patenting scenario, you're really giving disgruntled employees a tremendous weapon against their disgruntling employers. You could take, in this case, for example, anybody that worked on this technology and went out in any other technology that could conceivably make use of a per C6 cell in any fashion could sabotage the original folks just simply by somehow working in a dependent claim reference to this cell. You've used up all your rebuttal time. But you did have various questions from the court. So we'll give you your full five minutes rebuttal. And we'll hear from the government now. Mr. Jenks? May it please the court. I'd like to begin just by answering a few of the questions the court asked my opposing counsel. Everyone agrees here that the one-way test, if it applies, results in no patent being granted. The question about separate filings versus the PDO control test. Does the PTO agree that if the two-way test applies, he gets the patent? The examiner actually said that he agreed with that. So the board never addressed it. So we don't have a final agency position on it. But certainly the examiner said, if I apply the two-way test, I agree. I'm not going to find these claims unpatentable. So how do I construe that second prong of what Judge Shull articulated as a two-prong test? The second one would be who controls the rate of prosecution or how has it been controlled or is there any fault? How would the PTO argue I should interpret that? Well, the way the court in Berg interpreted it and the way that the court in Basil Poliolafine interpreted it was saying that where the PTO is solely responsible for the delay, we are going to apply the two-way test. In Bratt, they shaped it slightly differently. They said, we're holding, this is not Phillips. Phillips was the assignee. Phillips' fault. So we are going to apply the two-way test. In Bratt? I mean, I've been racking my head. How do you get around Bratt? Bratt, we have a very large difference, Your Honor, in that the court in Bratt specifically finds that any delay in the first chain of applications was the applicant's fault. Wait, any delay? I'm sorry, explain. I'm sorry, Your Honor. There's two lines of applications. Dill and then the other one that stemmed from the Neverland's patent and had one, two, three, four, three continuations. And that second one is the Bratt line. And the delay there was the delay in presenting claims in the Bratt line such that the Dill line was able to overtake the Bratt line. So the federal circuit, or excuse me, it was the CCD, looked at that and said, okay, we've reviewed your prosecution history, we've reviewed the board record. On this record, it's not your fault, Mr. Phillips, but Mr. Bratt, it's not your fault that this delay took place. The court in Emert characterized that as a finding that it was the PTO's fault that the delay took place. Now, the distinction between Bratt and the case at bar, this case, is the board here specifically finds that it was the applicant's fault. That the six-year delay, and you can see this on A7 of the opinion or A10 of the opinion, the six-year delay between the presentation of the first application and the presentation of the claims was, in fact, the applicant's fault. Well, but the federal circuit, how do you construe Bratt as anything other than the federal circuit saying there's not a problem for you to prosecute claims in series rather than in parallel, or the CCPA in Bratt? How do you not construe that as the ultimate conclusion that they reach in this case? Because they say it's not the patent applicant's fault that Dill issued first, when clearly in Bratt, just like here, the claims that were filed in the fourth application could have been filed in the first. Well, there's two answers, Your Honor. First, the Berg Court addressed what happened in Bratt. In a lot of dicta. Absolutely, Your Honor. And the second answer, if that's dicta, the second answer is Eli Lilly has a very, very similar fact pattern to Bratt. And if we just drew boxes, like the boxes in our brief opposite page 3, page 10, for Bratt, Eli Lilly, and this case, we wouldn't have the whole position. And what we'd have is a set of charts that look very, very similar. So ultimately, we have to dig a little deeper. And here, and in Eli Lilly, the court found that it was the applicant's fault. In Bratt, the court specifically held this is not the applicant's fault. So the distinction on the facts, ignoring the dicta of Berg, if you call it that, I suggest it's perhaps a bit more, says that. Pardon me, Your Honor. No, no, I'm sorry. I should let you finish your response to Judge Moore's question. But in Lilly, though, there was the suggestion that there was sort of gaming the system, if you will. I mean, it looks like there were all of these various applications filed. And they referred to there's some reference in there to the Habsburg Empire at the beginning of the opinion. I mean, it seemed that the court in Lilly was looking a little bit askance. Yeah, the reference to the Habsburg legacy. And there were more, you know, in this imaginary chart of boxes. The most boxes appear in Eli Lilly. And because of this Habsburgian line of applications. The least boxes appear in Bratt. And in between is this case. So I don't think that counting the number of actual applications, number of divisionals, number of continuations is really this positive. The question is looking at it. Let me ask you this, if I could, Mr. Cain. What is the office's position on prong one? In this case, your honor? Prong one in this case is not met. Therefore, the Berg facts do not apply to this case. Wait a minute, you say prong one. The applicant, we agree. And the examiner agreed, the board agreed. The applicant could not have filed this in the same exact application as was done in Berg. You're saying the applicant has satisfied prong one. That's right, your honor. As you put the test earlier in the argument, the applicant really couldn't have filed all their claims in one application. Because one invention was developed earlier than the other. Now that doesn't end the inquiry. We go to prong two, which is the control test. So we're really saying here, does it really come down to if the court feels that this situation is most like Bratt, Fallot would win. If the court feels, on the other hand, that the situation is more like Lilly, or one of the other cases, the office wins. No, that's incorrect, your honor. Because whether or not you apply the one-way or the two-way test is... Well, on this point, it would have to go back for an ultimate analysis, but I'm just saying... I think I'm answering your question on this point. Whether or not you apply a one-way or a two-way test is a question of law with underlying factual findings. And those underlying factual findings are given deference. So here, the underlying finding that the applicant was at fault for the delay is of deference. And the court would have to say, we reviewed the record, and there's no evidence, no substantial evidence of any delay. Now, the applicant hasn't presented any arguments or evidence that show he could not have presented these claims earlier, or that he did present them in the first and fought valiantly for them from the very beginning. So, regardless of Brad or Eli Lilly, the court first starts with the deference owed the agency on fact-finding that underlies that decision. A minute ago, you just said, the board found the applicant was at fault, and that factual determination is owed deference. Now, I'm on page 7 of the board's opinion, and I don't see that fact-finding that you said, the board found the applicant was at fault. That's what you just said to us. What I see is the board saying, applicant has provided no evidence that the PTO controlled the rate of prosecution. That, to me, seems different. So show me where you say they're at fault. Okay. Well, Your Honor, in a sense, the control test assumes one or the other is at fault. And so that is helpful. Wait, isn't it possible that nobody's at fault? It could just be a situation where the PTO procedures are such that a certain period of time is required, certain things have to be done, the applicant complies, the PTO doesn't act improperly, and it's just the normal course of events that causes things to unfold the way they do. As Judge Moore suggested, nobody would be at fault. I don't agree with that because the presumption in all these analyses in the- What about Berg? It says the PTO controls. Right. But if I just let me answer the first question, if I may, Your Honor. The presumption in all these cases is that we have a first filing of a basic invention. We have a second filing later of an improvement. Now, if that basic invention, if everything proceeds in the normal course, that basic invention should issue before the improvement. That is how the normal course should be. And if it doesn't and the applicant has done everything diligently in both streams of patents, then it's likely the agency's fault or it is the agency's fault. In this case, if I can go back to Judge Moore's question, on A10, the board says, Appellants created the Catch-22 themselves by choosing to delay submitting the instant claims for more than six years from the original filing date. Had appellants filed these claims in their first application, either the claims would have issued prior to the reference patents or appellant might have been able to show that the delays were due to PTO action. So we do not think appellants should be rewarded for dilatory filing of claims by eliminating common ownership of the double patenting terminal disclaimer rule. So here we have the board affirmatively saying, You delayed and therefore you can't show it's the PTO's fault. Let me ask you, though, what if the facts, though, line up with BRAC? In other words, you have the same sort of getting to what I think Judge Moore was discussing with you earlier. Say you have the facts, facts A, B, and C. And those facts fall in line with BRAC. And everyone agrees that those are the three facts. But the board says, In that situation, there's fault. But BRAC says, No, in that situation, there's not fault. What do we do then? Then you have a more difficult case than the one in front of you today, Your Honor. Today, we have similar, admittedly similar cases, but we do not have a limited universe of three facts, which are limited to, you know, when each app was filed. Oh, I understand. I was just using that. I'm trying to, I mean, if, I guess what I'm trying to say is if you have a sequence of facts and those facts are sort of matched with the BRAC facts, are not we in the board compelled to conclude that there was not fault or it was not controlled by the applicant? Well, there's two cases on this point. One is Berg, which discusses the BRAC facts and discusses also the law that was in existence at the time of BRAC. And BRAC went off, though. I mean, I'm sorry, Berg again went off on prong one. Absolutely. And then we have Eli Lilly. Now, I mean, Berg does have informative information in throughout about the second prong and indeed addresses in note six in Berg exactly the situation posited here. But putting that aside, we also have Eli Lilly, which in very similar circumstances found something different. So if you only are going to allow me three facts, I'd say the three facts are the same. No, I wasn't using just three facts. I was just saying, trying to give the... So essentially that's the distinction between Lilly, our case, and the BRAC case. It's what about the finding of fault? And in BRAC, we have a holding, no fault. Here we have a finding that there was fault on the part of the applicant. Immert makes clear that they believe the BRAC court found the PTO at fault. And Eli Lilly... In BRAC, was there an argument that the applicant was at fault for the series of continuations that the applicant in BRAC could have filed their later claims earlier? Meaning, did the PTO make and did this court consider the very argument you're making today? Because the facts between this court and BRAC, this case and BRAC are just nearly identical. But of course, you're always free to argue that you have a new argument that we never considered and wasn't raised in BRAC. Namely, that it's problematic that the applicant delayed X number of times. Given that BRAC is your own case, I'm hoping you're going to tell me you went back and looked at it thoroughly, since it's the primary reference that they relied upon. Well, Your Honor, I have to admit that by the time I thought of pulling the files on BRAC, it was too late because the files were in the archive and we didn't receive them in time to fully answer your question. So the answer is, I don't know exactly what was said. Now, if we look at what the board said in BRAC, which is in the BRAC opinion, there are some essential hints that what was going on is a little bit different. And that occurs in BRAC... Excuse me, let me find it. There, the board's analysis of the inventions, the two inventions, is different than what the board's analysis here was. And also the court agreed with that analysis. In BRAC, the two inventions were considered to be separate and either could have been invented before the other. So we have that. In fact, the board reversed one of the double patenting rejections that the examiner presented, essentially on that basis. And the courted portion of the board opinion is on 592 to 593 of BRAC. Okay, you're telling me a lot about the board opinion in BRAC, but was any of that relevant to the CCPA in terms of their... And said, yes, the reason for that is because these two inventions are independent. Either could have been invented before the other. And that was another basis, another factual difference between this case and that case. Here, we have the claims to the packaging line cells and the reference patent claims a method of using those cells now being claimed. Why isn't... I mean, what you just said to me seems so logically what the rule of law should be. Why isn't that the rule? Look at the two inventions and figure out which one really was invented first. Is this really a basic and improvement patent? Where did this whole two-way, one-way mess come up? I mean, how did this get infused into the situation? I mean, why not return to sort of the basics of, you know, is this a basic patent and an improvement patent? And if so... Well, I think part of the problem is every jurist and every patent lawyer may think that there's a slightly different definition of what a basic patent is and what an improvement patent is. So we really want to rely on what is patentably distinct and what is patentably indistinct. But the classic example is this basic and improvement patent, and when an error occurs that forces the improvement out the door early, then the PTO is at fault. Keep in mind that the two-way test has always been the narrow exception to the one-way test. So the default is to apply the one-way test in every situation, and then it's the applicant's job to say, look at this long delay between your chance to first present the claims and the time you did present the claims. Your argument is the PTO is not at fault because there's no way they could have issued the application that was filed in 2003 prior to the others. It was filed, in fact, after those others were... That's correct. If your Honor is looking at the chart opposite page 2, the board specifically went through and said, you could have filed this in the 170 application, the very first application, but you filed other subject matter. Ditto the 765 application, the same for the 548 application. The board went through each of those, said you could have done it, and you didn't do it. And the fact finding by the board was the applicant was responsible for the delay in filing the broader claims, and therefore... Right. For the delay that led to these claims only coming before the patent office after the claims in the other line had already issued. The key delay has to correspond to the examination and issuing period of the reference patent line. And the board found that, yes, that is a problem. And if I may, Your Honor, earlier, I see on the chart, this is my fault for the chart, the 548 was actually a divisional of the 765. The arrows just indicate the timeline. So there is one divisional in the chart here. However, consonance between the claims was not maintained in this whole series. So whether or not that has an influence, I don't think it does. Mr. Jenks, I have just one question. What did you say earlier in response to the question of what happens if the two-way test applies here? If the two-way test applies here, then the board is incorrect, and the court has to reverse and remand or vacate and remand to the agency. The examiner in this case said the two-way test, I admit, essentially, he didn't say I admit, I apologize. He said, I'm not going to apply the two-way test. I know that won't work. So the board never looked at it from the two-way perspective. So the court doesn't really have a two-way, if it's a two-way finding in front of it. In other words, a two-way analysis hasn't been done. A two-way analysis has not been done by the board or formerly by the board. We'll look at the case again, but whether or not it need applied two-way analysis is up to them, is up to the director ultimately. Just so I know, was there a restriction requirement associated with the divisional? You seem to know the history really well. If I'm getting into too much detail, I'll understand if you say I have to look it up. The answer is I have to look it up. In the case of a quote-unquote voluntary divisional or a true divisional under 10121, we don't know. Thank you, Mr. Jenks. Your Honor, if I may, one typographical error in the brief, and I don't want to confuse the court any further, but on page 10 of my brief, of the agency's brief, we have cited the 870 patent, and there is no 870 application. I apologize. It's on 10 and 11. It's the 170. Thank you, Your Honor. Okay. Mr. Trask? A few points. I'd remind the court that Berg was also a case where there was a 17-year term involved and where the court criticized Berg rather strongly for the manner in which that prosecution was conducted. There were two cases filed, neither of which referenced the other. So I would say as it pertains to the fault issue, which we're focusing on, it's our strong belief that fault really only becomes material to these considerations when the applicant is found to have done something proactive to manipulate the system. And it just makes sense that in a doctrine which is an effort by the judiciary to fill a perceived hole that permits abuses, which is to stop abuses, that that would be the basis upon which decisions have been made. Well, tell me why I shouldn't draw an equivalent between the Lilly court's determination with regard to fault and the board's determination here? Because it is a fact-finding to which I must give substantial evidence deference. And the opposing counsel suggests, Mr. Jinks suggests, that I think is responsible or at fault for the delay. My recollection of Lilly is that the inventor entities were identical. I believe that's the case, which is not the case here. And that it was their opinion, their determination, that the prosecution effort had been manipulative. And in other words, there could be an element of fault attributable to and I'm talking about proactive fault, not just the timing. Why isn't delay fault? I mean, we've got this whole body of law that has evolved with regard to submarine patents. It didn't go very far, but it evolved. Submarine patents were a mechanism of the past that many used and I will plead guilty to it myself, but it's over. Double patenting was an effort to deal with that in part. The 84 revisions dealt with a death blow. It just isn't happening anymore. And I don't think it can be a rational basis under a system where the patent terms expire 20 years after filing. It's just gone. In this case, what could the appellants be guilty of? What could they be at fault at? Leaving 13 years of their patent term on the table? That's what's happening. These claims are allowed. They're going to expire in I think it's 2016. That's how long they're going to last. So the whole area of fault in order to manipulate the system to get more patent coverage for a longer period of time is not present here. It can't be present here. Harassment, to the extent it matters here, the potential of harassment in a case like this ignores the fact that any number of people, other investigators are going to in their patents mention the per C6 cell line. They'll do that because it's a trademark cell which is well known. There's lots of data on it. It's publicly accessible. And it's naturally, if you're getting down to preferred embodiments, that that cell will be named. Those people have no connection with this company. If somebody infringes their patent, these appellants, if these claims are allowed, and I don't think anybody would call that harassment. Just to be clear, are you saying that the board did not find fault on the part of the applicant, as Mr. Jenks suggested, or are you saying that there is no substantial evidence to support the board's fact finding of fault? And we're talking about this case? This case. I think they did not. I'm not aware that they found applicants at fault directly. I think the inference is there because they felt it obligated to say somebody's at fault. I don't understand why somebody has to be at fault. I just don't understand what you're at fault of doing or not doing. In a case like this, the applicant filed a... Suppose the board said, we find applicant at fault for the six-year delay because they could have filed the very genus claims that they ultimately filed as far back as their first application. They chose not to. They must live by the peril of that choice. We find them at fault. I would just say that that's not the law. There's no doubt. I mean, we aren't here saying that those claims could not have been filed in the first application. They were not. They could have been filed in some other application. They were not. Our position is there's no obligation to do that. You aren't at fault at anything because you haven't presented claims. Now, if somebody has been disadvantaged because of that decision, there's lots of ways to handle that. Believe me, if somebody at the trial level has been disadvantaged, they're going to write up and tell the judge. The judge has all the tools that are needed to handle it. That's so speculative. I don't see how that could even occur in a case where really what has happened as a consequence of the choices made is that you have a six-year patent instead of a 20-year patent. There's no substantial basis for even worrying about it. Certainly, I'm not aware that I think the board did determine in this case that the applicants could have filed the claims that are presently on appeal in earlier applications. I think that doesn't make any difference. I don't think there's any legal requirement to do it. I don't think double patenting law requires you to do that. I don't think anybody is at fault because they didn't do it. Every case that I know about, and I must have read most or all of them, every case that somehow deals with this two-way or the one-way test has found that the applicants have done something wrong. Thank you, Mr. Pratt. The case is submitted. Thank you also again, Mr. Jenks.